AO 91 (Rev. 11/11) Criminal Complaint

AUSA Michael Porter

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Mykel Laron Treadwell,<br><br>*Defendant(s)* | Case No.<br><br>21-001-SMM |

FILED BY **CGA** D.C.

**Jan 5, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Fort Pierce

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 2019 until March 2020__ in the county of __Highlands__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 | Conspiracy to distribute a mixture and substance containing a detectable amount of hydromorphone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. |

This criminal complaint is based on these facts:

-SEE ATTACHED AFFIDAVIT-

☑ Continued on the attached sheet.

*Complainant's signature*

DEA Special Agent Andrew B. Irwin
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by videoconference.

Date: __January 5, 2021__

*Judge's signature*

City and state: __Fort Pierce, Florida__    Shaniek M. Maynard, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT

I, Andrew B. Irwin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Drug Enforcement Administration ("DEA"), and have been employed with said Administration since September 11, 2010. I am a law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States, who is empowered by law, and duly authorized by the United States Attorney General, to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1), and in Title 21, United States Code, Section 878.

2. Prior to my employment with the DEA, I was employed as a police officer and narcotics agent with the West Palm Beach Police Department from October of 2004 to September of 2010. During this time, I received specialized training regarding the investigation and prosecution of offenses involving the possession, manufacture, distribution, and importation of illegal drugs, as well as methods used to conceal and finance illegal drug transactions. As a police officer with the West Palm Beach Police Department, I participated in narcotics investigations involving consent searches, controlled purchases, search warrants, and searches incident to arrest.

3. As a Special Agent with the DEA, I have successfully completed DEA Basic Agent Training, which was held on the training grounds of the Federal Bureau of Investigation ("FBI"), located in Quantico, Virginia. During my employment with the DEA, I have participated in drug investigations which have included physical and electronic surveillance, the debriefing of sources of information and confidential sources, the execution of search and arrest warrants, evidence handling, and the arresting of subjects. I have also spoken, on numerous occasions, with other experienced drug investigators concerning the manner and means that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods for investigating and dismantling drug trafficking organizations. I am currently assigned to the DEA Port St. Lucie Resident Office, and regularly coordinate investigative efforts with various federal, state and local law enforcement agencies, who work

together in a cooperative relationship to further the investigations of criminal violations of federal and local laws; particularly those relating to narcotics offenses. As a Special Agent with the DEA, I have participated in several court authorized wiretaps and numerous investigations that involve the use of lawful electronic surveillance.

4. During my tenure as a law enforcement officer, I have conducted investigations of, and have been instructed in, investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, money laundering, maintaining places for purposes of manufacturing, distributing or using controlled substances, and conspiracies to commit these offenses. These investigations have resulted in arrests of individuals who have smuggled, received, and distributed controlled substances, including powder cocaine, cocaine base, commonly known as "crack cocaine," marijuana, heroin, MDMA, and diverted prescription pills, and the arrests of individuals who have laundered proceeds emanating from those illegal activities. These investigations have also resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

5. I have utilized numerous confidential sources to successfully infiltrate various-sized narcotics enterprises by way of intelligence gathering, participation in consensual recordings, and monitored purchases of controlled substances. I have executed search warrants for controlled substances-related documents and have conducted surveillance in connection with numerous narcotics investigations.

6. The information contained in this Affidavit is based upon my personal observations, as well as information provided to me by other law enforcement officers. My training and experience as a DEA Special Agent, along with conversations with other federal, state, and local investigators familiar with narcotics trafficking, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

7. This Affidavit is being submitted for the sole purpose of establishing probable cause that from at least as early as in or around January 2019, and continuing through in or about March 2020, in the Southern District of Florida, Mykel Laron Treadwell ("Treadwell") conspired with other persons, known and unknown, to distribute a mixture and substance containing a detectable amount of hydromorphone, a Schedule II controlled substance, in violation of Title

21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846. This Affidavit, therefore, does not contain every fact known to me regarding this investigation.

## PROBABLE CAUSE

8. In January of 2019, I interviewed a confidential source ("CS") in Highlands County. Among other things, the CS identified Marquis Sharod Bellamy ("M. Bellamy") and his brother, Coy Lee Bellamy, Jr. ("C. Bellamy"), as distributors of cocaine in Highlands County, Florida. The CS further advised that he/she knew C. Bellamy and Takaria Vashon McCray ("T. McCray") to sell prescription pills, adding that he/she was capable of purchasing quantities of hydromorphone from T. McCray for a price of ten dollars per pill.

9. Law enforcement utilized the CS to conduct controlled buys of hydromorphone from, among others, Treadwell and T. McCray.

10. A controlled buy is an investigative technique, utilized by law enforcement, where a confidential source or undercover law enforcement officer seeks to purchase narcotics from those involved in drug trafficking. As controlled buys are closely monitored, and often visually and audibly recorded by law enforcement, this technique can provide material evidence of those involved in drug trafficking.

11. During the course of this and other investigations, the CS repeatedly provided actionable intelligence and was directly responsible for the arrest and prosecution of several subjects within The State of Florida. The information supplied by the CS was proven to be reliable and truthful. The CS was compensated monetarily for services and information the CS provided to the Highlands County Sheriff's ("HCSO") and the DEA. The CS is not a convicted felon and has a misdemeanor conviction for petit retail theft from 2003. Over the course of this investigation, the CS has been interviewed multiple times in relation to the activities of, among others, Treadwell, M. Bellamy, C. Bellamy, T. McCray, Markyrie McCray, Sr., and M. McCray, Jr., wherein he/she admitted to purchasing and/or attempting to purchase personal consumption quantities of marijuana and powder cocaine from some of these individuals. Although the CS conducted, or attempted to conduct, these transactions without authorization from controlling agents, on each occasion controlling agents questioned him/her about this, the CS fully disclosed the details of these unauthorized purchases. On occasion, subjects related to this investigation requested that the CS assist them in various roles, to include providing transportation of narcotics

or the proceeds of the sales of narcotics from one location to another. Although on most occasions the CS was able to avoid or decline these requests, aware that a lack of assistance may indicate to these subjects his/her cooperation with law enforcement, on occasion the CS could not avoid providing assistance upon request. Although this assistance was not authorized by controlling agents, the CS notified controlling agents of each occurrence, and the circumstances surrounding why he/she felt he/she needed to assist on each occasion.

### Controlled Purchase of Hydromorphone – 09/06/2019

12. On September 6, 2019, the CS purchased 40 hydromorphone pills from Treadwell for $800.00, during a controlled buy that took place inside Treadwell's vehicle as it was parked near the intersection of US Hwy 27 and Arron Drive, located in Lake Placid, Highlands County, Florida. Law enforcement searched the CS and his/her vehicle for money and drugs prior to the transaction with negative results. Law enforcement monitored this transaction "live" through audio and video monitoring and recording devices, which law enforcement provided to the CS. Law enforcement physically observed Treadwell's vehicle parked at the location where the transaction took place, as the transaction was occurring. Law enforcement also physically observed the CS leave the area shortly after the transaction took place and followed the CS to a rendezvous point, at which point law enforcement retrieved 40 hydromorphone pills from the CS. DEA lab results confirmed that the pills related to this controlled buy tested positive for hydromorphone, a schedule II controlled substance.

13. This controlled buy was both audibly and visually recorded. I identified the CS and Treadwell in the recording of this transaction. The recording shows Treadwell sitting in the driver's side of his vehicle counting the pills as the CS waits.

### Wiretap of C. Bellamy's Phone

14. On October 4, 2019, the Honorable Robin L. Rosenberg, United States District Judge, Southern District of Florida, issued an order bearing number 19-WT-80006-ROSENBERG authorizing the interception of wire and electronic communications over a cellular telephone serviced by AT&T with assigned telephone number (863) 243-2394 and International Mobile Subscriber Identity Number (IMSI) 310150917791359 ("TARGET TELEPHONE 1"), utilized by C. Bellamy. Interceptions over TARGET TELEPHONE 1 took place from October 4, 2019, through November 2, 2019.

15. During intercepted calls that occurred over the wiretap of C. Bellamy's phone, Treadwell and C. Bellamy discussed the distribution of hydromorphone pills that Treadwell provided to C. Bellamy. In one of these calls, C. Bellamy detailed how this distribution took place. Specifically, Treadwell and C. Bellamy traveled together to a doctor in the Tampa area on a regular basis, where they both obtained prescriptions for hydromorphone.[1] They filled the prescriptions at a local pharmacy in Highlands County. Treadwell sold some of his pills to C. Bellamy, and sold the remaining pills to street level dealers and addicts in Highlands County. C. Bellamy distributed the pills he obtained from Treadwell, along with the pills from his own prescription, to street level dealers and addicts in Highlands County.

16. The following is an excerpt of an intercepted call between C. Bellamy and an unknown male on October 19, 2019:

C. Bellamy: I can get you one MRI . . .

UM: Where at?

C. Bellamy: That bitch in Pompano bro.

UM: *Am I going to be able to get the pills the same day?*

C. Bellamy: Nah its going to be like, a three day process. You're gonna have to get the MRI, then you got to get a primary doctor I know where all that's at.

UM: Ok, ok, ok.

C. Bellamy: And then you go to uh, then when you get the primary doctor, they gonna send the MRI to the regular doctor.

UM: Yeah?

C. Bellamy: *And then you get a pill, I think I go to the doctor Wednesday, me and Kel.*[2]

UM: How many, how many, how many do they give you?

---

[1] Hydromorphone is an Opioid used to treat moderate to severe pain. Hydromorphone is usually marketed under the brand name Dilaudid.

[2] Based on information provided by the CS, from other law enforcement officers, as well as intercepted communications from the wiretap of C. Bellamy's phone, Treadwell goes by "Kel," which is a shortened version of his name, "Mykel."

| | |
|---|---|
| C. Bellamy: | *I get a hundred and fifteen every twenty eight days. A hundred and five, Kel get a hundred and fifteen. I get a hundred and five. Kel get a hundred and fifteen.* |
| UM: | A hundred and fifteen? |
| C. Bellamy: | *Yeah Kel get a hundred and fifteen. I get a hundred and five. And when I went back, cause they had, they had me at eighty four, so I ain't want to go up too much so I just went back there and said man I'm running out of pills I had started working.* |
| UM: | Yeah. |
| C. Bellamy: | He just, he just, he just gave me the other, . . . So shit I was straight with that. That straight, man I made like . . . almost thirty dollars a piece. |
| UM: | That what you sell 'em for? |
| C. Bellamy: | Huh? |
| UM: | That what you be selling 'em for? |
| C. Bellamy: | *Thirty a piece bro, I don't have, them bitches last a week, then I go buy all of Kel's pills; Kel sell me his for sixteen. I buy all of his. I'll have like two hundred and fifty pills.* |
| UM: | What they is? |
| C. Bellamy: | Huh? |
| UM: | What they is |
| C. Bellamy: | They Dilaudids. You get whatever you want bro. Whatever, whatever you prefer, whatever move in your city, I just got this cause I know they were going for forty dollars. |
| UM: | Yeah? |
| C. Bellamy: | They go for forty, but it be so many people be having them, T.K. be having em so I just under cut them and sell them for . . . thirty. It only cost me two hundred dollars. Shit, so the rest is profit, I make like three thousand off the pills. |
| UM: | See down here they pay by the milligram, like ten they go for ten, you feel me? |

| | |
|---|---|
| C. Bellamy: | But see that's Percocet. . . . that's what they using as . . . like a Perc ten . . . |
| UM: | Yeah. |
| C. Bellamy: | A thirty, that's thirty dollars. |
| UM: | Yeah. |
| C. Bellamy: | But see Dilaudids doing fours and eights. You going to have to ask some people around who be doing 'em before you try to get them. You see they go for uh, they got the fours, the fours go for twenty. |
| UM: | Yeah. |
| C. Bellamy: | Fifteen, twenty and the eights go for forty. I mean they shooting 'em bro. |
| UM: | Ok, ok. |
| C. Bellamy: | *They shooting 'em see they doing that cause the heroin gets so fucked up with the, all that bullshit they putting in it.* |
| UM: | Yeah. |
| C. Bellamy: | *So they like down here you can't sell no boy[3] down here. Cause the bitch rather buy the pills cause they know what they're getting. See you get the boy and then that bitch might not hit right. And less shit like that. So I ride to Tampa every month, me and Kel going over there Wednesday.* |

17.  The following is an excerpt of an intercepted call between C. Bellamy and Treadwell on October 21, 2019:

| | |
|---|---|
| Treadwell: | Nah, I mean you want to do it like that, then take yo shit down there uh . . . week whatever you feel me, *cause you got the pills*. |
| C. Bellamy: | Yeah. |
| Treadwell: | *Just . . . you done made the money for it.* |
| C. Bellamy: | *Well I'm gonna sell yours first.* |
| Treadwell: | Oh, ok ok ok. |
| C. Bellamy: | *I'm gonna get off yours first then I'm gonna sell mine.* |

. . . .

---

[3] "Boy" is slang for heroin.

| | |
|---|---|
| C. Bellamy: | *I'm gonna get your pills, I'm gonna sell your pills first.* |
| Treadwell: | Yeah? |
| C. Bellamy: | So, then I'll sell mine. |
| Treadwell: | Then your shit last. |
| C. Bellamy: | That way I can get your shit out the way. Cause you got shit going on. |
| Treadwell: | Yeah I got this pound you know, I'm trying to jug this pound.[4] |
| C. Bellamy: | *Yeah. . . . I'll sell yours first.* |
| Treadwell: | Mmm hmm. |
| C. Bellamy: | *It took, it took like a week to get off yours, . . . sell mine the second week.* |

18.  The following is an excerpt of an intercepted call between C. Bellamy and Treadwell on November 1, 2019:

| | |
|---|---|
| C. Bellamy: | Eh, what I owe you man? |
| Treadwell: | *. . . For a, for the pills?* |
| C. Bellamy: | Yeah . . . |
| Treadwell: | *A lot of money bitch. What you gonna give me?* |
| C. Bellamy: | Psssstt, five hundred. |
| Treadwell: | Who? |
| C. Bellamy: | Five hundred. |
| Treadwell: | Shit. I ain't got my money from what I ain't paid for the pills . . . |
| C. Bellamy: | . . . You ain't lose. |
| Treadwell: | *. . . Sixteen hundred for them motherf\*\*\*ers. Get them bitches out.* |
| C. Bellamy: | You ain't lose. |
| Treadwell: | . . . them motherf\*\*\*ers outta the bottle. I done lost ten dollars now. |
| C. Bellamy: | *Alright I'll give you five ten.* |
| Treadwell: | Damn. |
| C. Bellamy: | . . . (laughing) . . . |
| Treadwell: | Hold it, how many pills you got right now? |

---

[4] Based on interceptions from the wiretap of C. Bellamy's phone, law enforcement learned that Treadwell regularly received large quantities of marijuana, via postal carrier, from an unknown source of supply in California, which he distributed throughout the Lake Placid area.

| | |
|---|---|
| C. Bellamy: | Uh, shit I just sold fourteen. |
| Treadwell: | Of your pills? |
| C. Bellamy: | Nah, I still got all mine. |
| Treadwell: | Oh. |
| C. Bellamy: | I gave T.K. thirty out of mine. Out of the . . . |
| Treadwell: | Yeah. |
| C. Bellamy: | Out of the ones I had bought. |
| Treadwell: | Oh, oh, ohhhhh. You had bought some. |
| C. Bellamy: | . . . *What do I owe you man we come up with an agreement* . . . |
| . . . . | |
| Treadwell: | What you got left? |
| C. Bellamy: | Uh, probably like twenty, if that. |
| Treadwell: | Yeah. |
| C. Bellamy: | Yeah. I should have like, uhh, three thousand cash. |
| Treadwell: | Yeah. |
| C. Bellamy: | Yeah. |
| Treadwell: | Lemme see, lemme see, uhhh. Uhhh, four. |
| C. Bellamy: | . . . pull up at your house where nobody knows what I'm driving. |
| Treadwell: | Oh shit, three. Well handle your business man. What you in? |
| C. Bellamy: | I'm in the truck. |
| Treadwell: | Where the care at? |
| C. Bellamy: | At the house . . . |

19. Records from the Florida Prescription Drug Monitoring Program ("PDMP") indicate that Treadwell and C. Bellamy each obtained between 84 – 112 8mg hydromorphone pills a month from January 2019 to March 2020.

### Controlled Purchase of Hydromorphone – 12/26/2019

20. On December 26, 2019, the CS purchased 40 hydromorphone pills from Treadwell for $1,000.00, during a controlled buy that took place on a porch area of Treadwell's residence, located at 126 Commerce Ave., Lake Placid, Highlands County, Florida. Law enforcement searched the CS and his/her vehicle for money and drugs prior to the transaction

with negative results. Law enforcement monitored this transaction "live" through audio and video monitoring and recording devices, which law enforcement provided to the CS. Law enforcement physically observed the CS arrive at Treadwell's residence, at which point Treadwell exited the residence and handed the CI the pills. Law enforcement also physically observed the CS leave Treadwell's residence shortly after the transaction took place and followed the CS to a rendezvous point, at which point law enforcement retrieved 40 hydromorphone pills from the CS. DEA lab results confirmed that the pills related to this controlled buy tested positive for hydromorphone, a schedule II controlled substance.

21. This controlled buy was both audibly and visually recorded. I identified the CS and Treadwell in the recording of this transaction. The recording shows Treadwell exit his residence holding a bag with the pills inside as he greets the CS.

### Interview of C. Bellamy – 03/11/2020

22. On March 11, 2020, a state search warrant was executed at C. Bellamy's residence, located at 410 Grissom Road NW, Lake Placid, Highlands County, Florida. Law enforcement seized, among other things, the following items from C. Bellamy's residence:

Approximately 19.2 grams of cocaine base;
Approximately 8.4 grams of powder cocaine;
Approximately 80 grams of cutting agent;
Approximately 260 grams of marijuana;
Digital scales containing cocaine and marijuana residue;
Three-thousand one-hundred eighty-four dollars ($3,184.00) in U.S. currency;
One hundred twelve (112) 8mg hydromorphone pills;
A loaded Glock, 9mm semi-automatic firearm;
A loaded Taurus, .410 gauge revolver; and
Several rounds of 9mm and .410 gauge ammunition.

23. Quantities of cocaine base, powder cocaine, cutting agent, hydromorphone, and marijuana, as well as U.S. currency and firearms, were located in the master bedroom of the residence.

24. I interviewed C. Bellamy post-*Miranda* at his residence. C. Bellamy admitted all of the drugs, including the hydromorphone, and firearms located at the residence belonged to him. During the interview, when asked about the quantity of pills that were located in his residence, C. Bellamy stated "about a hundred." C. Bellamy claimed the pills were his and had

been prescribed to him for pain in his back and leg. C. Bellamy further advised that these pills were prescribed to him, approximately every twenty-eight days, by a doctor in Tampa.

## CONCLUSION

25. Based upon the foregoing, I respectfully submit that there is probable cause that from at least as early as in or around January 2019, and continuing through in or about March 2020, in the Southern District of Florida, Treadwell conspired with other persons, known and unknown, to distribute a mixture and substance containing a detectable amount of hydromorphone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, as set forth herein.

Respectfully submitted,

_____
Andrew B. Irwin
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me, by video conference, in accordance with the requirements of Fed. R. Crim. P. 4.1, on this  5th  day of January, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-001-SMM

UNITED STATES OF AMERICA

v.

MYKEL LARON TREADWELL,

        Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? \_\_\_ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? \_\_\_ Yes ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _/s/ M. Porter_____

Michael D. Porter
Assistant United States Attorney
Florida Bar No. 0031149
101 South U.S. Highway 1, Suite 3100
Fort Pierce, Florida 34950
Tel: 772-293-0950
Fax: 772-466-1020
Email: michael.porter2@usdoj.gov